Call the first case. Good afternoon. Would the lawyers who are going to argue this case just tell us your names. You can do it from where you're seated. Just so you both know, and I think you both do know, that microphone does not amplify as it records, so keep your voices up nice and loud. You each have 20 minutes. You do not need to use all the time, but would the appellant like to reserve some of that time for rebuttal? Whenever you're ready, we're ready. Good morning. My name is Peter Skrill with the State Appellate Defender's Office. For the appellant, Juwan Thomas. Starting with the first issue, the question is whether the trial court sentence properly balanced the serious or free offense with the goal of restoring Mr. Thomas to useful citizenship. I think there are several reasons in this case the sentence did not achieve that balance. Mr. Thomas was 16 years old at the time of the offense, and we now know that at that age, the brain is still developing, so they are less culpable than someone who is older. The sentence, however, took 13 years, correct? Yes, Your Honor. To run concurrently. Yes. And he could have been sentenced to 30 years to run consecutively. Yes, Your Honor. Okay. Well, and I think this less culpability is for a variety of reasons. One, we know someone at that age is prone to rashness, impulsivity. They have an inability to assess the consequences of their actions, and they're prone to risk. And I think they're also susceptible to negative influences. And I think if you look at Mr. Thomas' background, there were several negative influences that played into this. You know, his father went to prison when he was two years old. He had family members and friends who were involved in gangs and drugs. And let's face it, it seems like violence and gun violence was a part of his life. Is there anything that suggests that the trial court refused to consider those factors? No, Your Honor, I'm not arguing that the trial court did not consider the factors. I'm arguing that even with that consideration, there is a constitutional mandate that overrides in cases. And I think in a case like this, that constitutional mandate is especially important because we're dealing with a juvenile, and we're dealing with the fact that this is an evolving area of law. And sometimes maybe the trial courts are not as up on everything that's happened in science and law. And I think one of the most important things is if we look at the sentence that's imposed, a long sentence would probably be counterproductive to restoring Mr. Thomas' useful citizenship. And so therefore, I think this court's discretion and authority is very important. I think it's important that this court look at this sentence and exercise its discretion. Because with this sentence, it could actually impede his ability to be restored to useful citizenship. But shouldn't we be giving deference and weight to the trial court given wide latitude at this point? Yes, Your Honor, there is deference, but it's not a rubber stamp. And if we look at the cases of people like Stephens and people like Stacy, I mean, there's no indication in those cases that the decision when people leave Brown was made that the trial court didn't consider proper factors. But there's an independent duty to ensure that the constitutional mandate is met. And I think in this case, that constitutional mandate was not met. Because we know that if you're looking at retribution, the legislature sets a sentence. And the courts have held that a minimum sentence can provide proper retribution. And I think in this case, a sentence added near the minimum would have been more appropriate and would have provided proper retribution. If he were an adult, the minimum sentence would have been 12 years. I think it was still six. Well, no, because it would have ran consecutively. I don't believe so. The judge could have given him six years to run consecutively. Well, I think that would have been if the judge had been finding severe bodily injury, which was not. The judge specifically found that there was no severe bodily injury in this case. And I could be wrong, but I don't think that the consecutive sentence was dependent upon his age. Would the firearms add-ons have been applicable if he'd been an adult? Well, there's not a firearm add-on for everybody that are worth a firearm. If he had been a convict of attempted murder, it would. They're not applicable here. Okay. So he had the exact same sentencing range as he would have had if he was 19? Yes, Your Honor. Okay. Which is six to 30 years. Yes, Your Honor. To be either concurrent or consecutive, depending on whether there's a severe bodily injury fight. Exactly. Okay. So, I mean, I think another thing to look at in this case when we're dealing with a juvenile is they also have a greater chance of rehabilitation. And the U.S. Supreme Court has recognized that. And I think if you look at the evidence that was presented in mitigation, Mr. Thomas has a great chance of rehabilitation. And I think the sentence should have reflected that. I mean, he understands that he has a problem with anger, and he took an anger management course and had counseling on that. Mr. Thomas is an intelligent young man with a lot of potential. He received A's and made the honor roll. I think more importantly, he has recognized, and I know it's hard for children his age, but as he matures, and I think he's already started this process of recognizing that he had these negative influences. What school did he attend when he was on the honor roll? I think that was as far as I know he was in. Detention center? Yes, sir. And how did he do it? I'm not sure either. I'm not aware if that's in there. I apologize. I don't think it's in the record. I didn't receive that information, so that's why I'm asking you. Yes, I mean, I'm not sure about that. That's important to me. How he did before? Yeah, if he was a straight-A student before going into the detention center, that's important to me, yes. I understand that. I guess I would say that that could be an important factor, but it's also an important factor what he's going to do going forward. And I think even if he hadn't been a good student before, he still has the potential. Like I said, I think he's a very intelligent young man. And I think that he could be a productive citizen. And he could be someone who could help his family and help his community. Any information on his IQ? I don't know if I'm aware of. I mean, the argument you're making, which I, of course, find compelling, is also probably true of a lot of people who are incarcerated for lengthy periods of time. What would give us the authority, even if we would have imposed a different sentence, to disturb this sentence by this sentencing judge? Well, I think the authority comes from the Constitution. If you look at, like, cases of people who suffer, if I was a murderer, like, if I was convicted of murder, and the appellate court stepped in and reduced it to the minimum sentence, and the people who stay, see, that was an ad crim sex assault, and the appellate court stepped in and reduced it to the minimum sentence. Because, as I said before, the minimum sentence can provide adequate retribution. I understand that. And what we would have to find is that anything other than a minimum sentence, or this seven years beyond the minimum sentence, was an abuse of the trial court's discretion. Yes, Your Honor, I'm arguing that this, I understand the deferential statement. I am arguing it. And I'm not saying it has to be the minimum, but I'm saying a sentence added near the minimum would have been more appropriate for this defendant. And I think you all know that many defendants probably come from tough backgrounds, but this is what we're at now. He was 16 years old, and this is, he was, he was a child. I mean, this is a lot to put on a child, to deal with the situations he did. I mean, Montgomery, Louisiana, a United States Supreme Court, children are less culpable because they are unable to extricate themselves from these negative influences and these violence-producing situations. But isn't the most important sentencing factor the seriousness of the offense? The state said that, and I think about Alexander for that, but I don't think it says that, it's not entirely degraded, but I believe that both of those factors are equally important under our Constitution. The seriousness of the offense and the goal of restoring the citizenship. And not to belabor the point, but also the seriousness of the offense has taken into account what the sentencing range that the legislature has set, which does have a six-year minimum for the sentence. But this is even less than half. I mean, this was pretty serious, right? It was shooting in this situation? Well, it was very serious, but as every aggravated battery requires, aggravated battery with a firearm requires someone to have been shot. So I think the sentencing range set by the legislature takes into account that someone will have to be shot for this crime to be found. And I don't want to downplay the significance of this, and I understand. I'm not arguing that he should escape punishment. I'm just saying the legislature has set a minimum of six, and I think when you look at someone like Mr. Thomas, his age and his ability to be rehabilitated, I really think a sentence added to the minimum would have been appropriate. If there are no further questions, I would like to move on to the jury roll. Sure. The case law says that the determination of error is a valid jury roll that depends on the facts and circumstances of each case. And I think in a case like this where you have someone who is 16 at the time of the offense and 17 at the time of the jury, the trial court has a duty to make sure that he explains what a jury trial is, that he has a constitutional right to demand it. If you look at the California risk case, it basically was basically determining whether it was a voluntary waiver. But Bill 6-3 says there must be an open court and understanding waiver. But he does, and you've argued his intelligence, and the court said, do you know what a jury trial is? And he said, yeah. He's standing there with his lawyer. And then as far as the right to a, the court used the term, knowingly exercised his constitutional right to waive a jury trial and actually said right to trial by jury three other times. So, I mean, I think what more should he have said to establish that he knew what it was when he said he knew what it was and he's an intelligent person and that he said right to a jury trial four times? Well, first of all, if it was intelligence, I would say, you know, children are often very smart in some regards but also naive and ignorant in others. I think as far as he did say right to a jury trial, but I think what would have been appropriate in this case is to explain that a jury would be 12 peers where he and his attorney have a right to participate in the selection of those, that they would have to determine whether to state his menace burden beyond a reasonable doubt, and that if he wins that, then the trial court's going to make that determination. And here he did say right to a jury trial, but there was no explanation of that right, the difference between that and a bench trial, and that he had a constitutional right to demand it. I mean, he did say that it was a constitutional right, but I think when you're dealing with someone that age, it requires more. I mean, in Fwang, there was a, the jury order was translated into Chinese, there was a written waiver, and the trial court also informed the defendant of their right to a jury trial through the interpreter. But they said in that circumstance, it still wasn't enough, because this is a fundamental right, and it has to be made understandable in open court. And I think Fwang just stands for the broader principle that the trial court has a duty to take into consideration the individual defendant there. And I think when it's a minor, the least that can be done is at least to explain that right and explain the difference between that and a bench trial, and ensure that he knows he has a constitutional right to demand that. And people didn't know if the appellate court found that it was faulty for not ensuring that he knew he had a right to demand it. They also noted that the defendant in that case was receiving psychiatric care. I think psychiatric care, and they said, you know, when a trial court is aware that a defendant is receiving psychiatric care, it has a higher duty to ensure that this waiver is understanding. And I think that's exactly what we have here, not psychiatric care. But someone who's not allowed to enter into a contract to vote, to buy alcohol, this is not someone that we would consider an adult or capable in many instances of our society. And I don't think the burden is too high on the trial court to say, you know what, one other point is this was his first time in adult court. In fact, it was really his first time he ever faced a trial. Looking at data, adjudication is a delinquent where he had, let's say, a remission when he was 14 for criminal trespass to a vehicle. So I think if you have a juvenile his first time in court, it's not that much of a burden to ask the trial court to explain what a jury trial is, explain that he has a constitutional right to that trial. If I can just say one other thing briefly, is I understand that you have an attorney, you're standing there as an attorney, but in your mind, that's never enough. Often you'll have an attorney, but it's required to be in writing and in court and understanding the court. If an attorney was enough, then you wouldn't really have those needs. And so I think in this case, the trial court should have stepped in and done a little more. If there are no further questions, I will reserve the rest for Rebecca. Thank you, counsel. Good afternoon, Your Honors. May it please the Court that my name is Adam Velasquez, and I represent the people of the State of Illinois. The defendant's 13-year concurrent sentence for aggravated battery with a firearm and aggravated discharge was not an abuse of the trial court's authority.   The defendant, in this case, could have received a combined sentence of 45 years based on his separate convictions for aggravated battery and aggravated discharge of a firearm. In this case, again, the trial court imposed a concurrent 13-year sentence on the defendant, which was at the lower range of what the defendant could have been capable of receiving in this case. What the record shows is that the trial court considered all the relevant mitigating factors, which included the defendant's age as well as his potential for rehabilitation. As the trial court noted when it imposed sentence, the trial court took into account the State's arguments in aggravation. It took into account the defendant's arguments in mitigation, and it took into account the precinct's investigative report, which the investigative report did note all of these factors that the defense counsel would like to point out. If your opposing counsel is right, though, isn't he, that 13 years is going to certainly severely hamper this young man's ability to make something of his life? He's going to serve 85 percent of that, right? So over 10 years. Correct. So at 85 percent, it would be approximately about 11 years when the defendant would be released from jail. Right. But I do not believe that that would necessarily impede his ability for rehabilitation. As Justice Walker pointed out, the defendant in this case, we don't know whether the defendant started receiving A's prior to the defendant becoming incarcerated or not, but I believe that what the record shows is, or what the record leads us to believe, is that the defendant did not start getting these good grades until he became incarcerated. Therefore, it cannot be said whether the defendant would have had a better chance of being rehabilitated if he were to serve the minimum sentence of six years. I think anybody would have a better chance of being rehabilitated if they got out in six years instead of 13 years, wouldn't they, or 11 years? Yes, ma'am. But what's before the court is what the record shows, and the record shows that while rehabilitation is a key factor for the court to consider, the serious nature of the offense is also an important factor that the court wants to consider and reconsider for this offense. And what the record shows … So if you're talking about seriousness of the offense, this was an aggravated battery, and it was a situation where there wasn't great battery time. I believe the victim was shot in the leg. That's correct. So it seems as though this would be a case, if you're sentencing him as an aggravated, on an aggravated battery charge, then this is probably the classic case where the minimum would be appropriate, because the victim was not shot. That victim was not shot intentionally, shot in the leg. Actually, he was, I think, carried to his grandmother's or auntie's house, and he's fine today. So there's no great bodily harm. This seems to be the classic case where he should have received six years, doesn't it? Not necessarily, Your Honor. While the victim in this case, as Your Honor pointed out, was shot in the leg twice, the state did ask for a finding of severe bodily harm. However, the court rejected that finding. Because there wasn't severe bodily harm. Correct, Your Honor. But the victim did still have to spend the night at the hospital. One night in the hospital. Okay. But he also missed several days of school, and he had to go on-going sessions of physical therapy. And again, the seriousness of the offense is something for the court to consider. That's really just one factor. Correct. The fact that this is probably someone who can be rehabilitated. He's only 16 years of age. If he had been sentenced to six years, he would only do about 4.8 years, and he'd have a chance to still get an education. What the record shows is that this defendant, at the time of the offense, he was already armed with a weapon. He had no idea that this car that he ultimately shot at, that this incident was going to happen. When this defendant was armed, this defendant started shooting anxiously at this vehicle and ended up hurting this 9-year-old victim. This defendant could have easily killed anybody in that car. Could have easily killed not only the victim, but also the victim's father or the victim's friend. I do believe that based on the facts that are before the court, this was a serious offense. And even though the trial court refused to find a finding of severe bodily harm, I think the broader picture shows that the trial court did in fact consider the defendant's age. And therefore, because the trial court had the discretion to impose anywhere from six to 45 years, I believe that a 13-year concurrent sentence really had the lower end of what this defendant could have been sentenced to. And therefore, I believe based on that, this defendant cannot argue that 13 years is excessive in light of everything that's before the court. Again, what it does show is that the court took into account not only the seriousness of the offense, but it also took into account the pre-sentence investigative report, which lists all of these other factors, including the defendant's potential for rehabilitation, his age, these outside factors that counsel points out as far as the neighborhood that he grew up in, the nature of the offense. As far as in this case, the defendant took it upon himself to start shooting at this vehicle. Instead of heeding his friend's advice, as the record shows, the defendant's friend wanted to get out of there. What the defendant in this case decided to do instead was take it upon himself to just start shooting at this vehicle. But does that go to his immaturity and their argument about the brain development of young people? Yes, and while that could be immature, again, this is something that was before the trial court, and it can be said that it is presumed that the trial court took all this into account. And based on the fact that the trial court sentenced the defendant within the sentencing guidelines, it can be said that the trial court in this case abused its discretion in sentencing the defendant to only a concurrent 13-year sentence. And one last point on the abuse of discretion. The people would just have to point out that this case is nothing like the cases that the defendant points out as far as people being murdered by Graham or Roper. Those are all cases where the defendant was sentenced to either mandatory last sentence or mandatory de facto sentence. In those cases, the trial court had no discretion to impose anything but right. But in this case, that's not the case. The trial court was within its discretion to impose a sentence that it deemed justified based on the seriousness of the offense, as well as all these other factors, including the defendant's age and potential for rehabilitation. Therefore, we ask that you affirm the trial court's concurrent 13-year sentence that was imposed on the defendant. Do you want to address the jury waiver? Yes, ma'am, briefly. With regards to the jury waiver issue, the defendant concedes in this case that he forfeited the jury waiver issue and cannot and the defendant in this case cannot show a plain error because based on what was before the court, the record shows Well, if there was a deficient waiver, it would be second on plain error, wouldn't it? Could have, Your Honor. But in this case, the defendant cannot show that any error occurred in this case. And as counsel pointed out, the determination as to whether a jury waiver is valid turns on the particular facts and circumstances of a particular case. And what the record before the court shows is that the defendant made a non-jury waiver where it was established that the defendant was represented by his attorney not only prior to trial but throughout the entire proceeding. The defendant in this case was represented by a public defender. And at no point in time throughout the trial or prior to trial did the defendant voice any objection to having a bench trial. There was at least three separate occasions where the trial court asked the parties whether this case was going to be set for a jury or a bench trial. The defendant was present. He was present with his attorney. And at no point did the defendant voice an objection to having this case set before a bench instead of a jury. Moreover, prior to trial, the defendant did sign a jury waiver, which while case law does say that just the mere signing of a jury waiver alone is not dispositive, a signed jury waiver does lessen the probability that the waiver rests not on the ignorant. That's people who read my case, which is a First District case. Prior to the commencement of the trial, the court asked Mr. Thomas, is this your signature on this document indicating that you want to waive your right to a trial by jury and submit this case to me as a bench trial? The defendant answered, yes, he had. And then the court asked the defendant, do you know what a jury trial is? And the defendant, again, replied yes. And, again, the defendant was there with his counsel being represented. What I believe here is the defense will want you to basically carve out an exception for minors, having a trial court require more than what case law says. And as our Supreme Court has stated-  Again, Ryan, based on case law, the determination goes as to, you know, the particular facts and circumstances of the particular case. And there is no case law that points to a sense that there should be more. And based on everything that's before the court and based on- There's arguments from counsel that the brain's not fully developed probably until especially boys age 30, 25- 50. 50, maybe. And also to think that he would understand without some specific admonishments as to what a jury trial is. I think there should be more than one. Well, that's correct, Your Honor. Counsel did point that out. Counsel also pointed out that this defendant was intelligent. And the state is also not allowing that this defendant was not intelligent. There's different levels of intelligence. Correct. He's intelligent for a 16-year-old, but he's still a 16-year-old. Correct. It's the same way. You have some very smart kids who can't complete their college applications properly. They can't apply for financial aid without their parents' assistance. Yes. It was different during our day. Most of us did all of that ourselves with no parents' assistance. That's correct. But now you can't do it without your parents. So it's a different world. And there should be more for minors. I believe so, Your Honor. I believe the case law is clear. And it's all on a case-by-case basis. But, again, as the Supreme Court has said, the trial court does not need to impart any set of monishment or advice. Yes, but isn't the law shifting? Counsel kind of argued that a little bit, how the law is shifting in this area. It's changing. I think we're starting to realize that we do need to treat minors differently. And, actually, we probably realized that in Illinois long before other states realized it. That's why we have our Juvenile Court Act. We have our juvenile court system. Minors should be treated differently. This was his first time in adult court, as counsel argued. I believe he was in court before when he was 14 years old on a very minor case. So he wouldn't have known anything about this. He wasn't a career criminal. That's correct, Your Honor. He was not. But I believe based on the circumstances, by all means, by everything that's indicated in the record, there's nothing to show here, at least in this specific case, that the defendant did not understand what was going on or that he did not know what a jury trial was. I believe based on the curricula that happened between the trial court and the defendant, he definitely understood what a jury trial was. And, again, if he wasn't sure, he could have asked his public defendant that was standing right there next to him to explain what a jury trial was. And, again, he was represented this entire time. During the entire time prior to the trial, the defendant could have, outside of the presence of the court, told his public defendant that he didn't know what a jury trial was or that he wanted a jury trial if that were to be the case. He was his public defendant. Are you referring to his attorney? His attorney. Correct, Judge. Therefore, again, everything that we have on the record should lead this court to reject the defendant's argument. Again, just to reiterate, this defendant was represented by his attorney throughout this entire proceeding. The defendant never voiced an objection to having this case before a judge instead of a jury. He signed the jury order. And I believe that with the trial court, the admonishment that the trial court gave this defendant was enough. He did ask the defendant if he signed the jury order, was that his signature, and that if he knew what a jury trial was, the defendant answered yes to all those, never voiced an objection. And he signed the jury order. Based on what the case that tells us, there's nothing more that's required. And based on these facts, again, we ask this court to affirm the defendant's conviction. Thank you very much. I would like to point out that I don't believe he was facing a 45-year maximum. I believe it was 6 to 30. If there had been a finding of severe bodily injury, then I think it could have been. But without that, I think it was a sentencing range of 6 to 30. But since it's a more severe offense. Because it's concurrent.   But what was the sentencing range on aggravated discharge? 4 to 15, I believe. Okay, that's what opposing counsel said. So the total would have been, if it had been consecutive, it would have been 45. If there had been a finding of that, yes. If there had been a finding supporting consecutive. And I think what Justice Brecher was referring to earlier, it would have actually been not mandatory, though, because of the new sentencing law at the time of his sentence. But regardless, in this case, he wasn't facing that. And if there are no further questions, thank you. Thank you, counsel. We will take this matter under advisement, and we will receive an opinion from the court.